DUNN *v.* DUNN.

5-65                                           257 S. W. 2d 283

Opinion delivered April 27, 1953.

*Ed B. Cook,* for appellant.

ED. F. McFADDIN, Justice. The question here presented is whether the Chancery Court *must*, at all events, annul a divorce decree on joint petition of the parties (filed in accordance with § 34-1217 Ark. Stats.), without the Court being free to exercise its judicial discretion.

On October 16, 1952, Albert Dunn and Josephine Dunn, filed in the Poinsett Chancery Court, their petition, which, omitting only signatures and verification, reads as follows:

"Come now Albert Dunn and Josephine Moore Dunn, Plaintiff and Defendant in the above styled cause, and respectfully petition this court to annul the decree of divorce entered therein on 23 June, 1952, and recorded in Chancery Record Book 'Q,' at page 321, clerk's office at Harrisburg, Arkansas, as so made and provided for by section 34-1217, Arkansas Statutes Annotated."

The Chancery Court denied the said petition, in an order reading as follows:

"Comes on to be heard before the court, on this 20th day of October, 1952, the petition of Albert Dunn and Josephine Moore Dunn, to annul the decree of divorce entered in the above styled cause on 23 June, 1952, and recorded in chancery record book number "Q" at page

321, clerk's office at Harrisburg, Arkansas, as so made and provided for by section 34-1217, Arkansas Statutes Annotated; and the court, after hearing upon said petition, *finds that the circumstances are such that the petition should be denied.* "It is therefore, by the Court, considered, ordered, adjudged and decreed that said petition be, and the same is hereby denied. And the petitioners objected and excepted to the action of the Court in denying said petition and their exceptions are hereby noted of record; and thereupon the said Albert Dunn and Josephine Moore Dunn prayed an appeal to the Supreme Court of the State of Arkansas, which is hereby granted." (Italics our own.)

The transcript before us does not contain a copy of the original divorce decree. The certificate of the Chancery Clerk inferentially states that no evidence was heard in the present case, although the above quoted order recites that the Court "finds that the circumstances are such that the petition should be denied." We presume "the circumstances" relate to the date and facts surrounding the granting of the original divorce, as well as the lapse of time between the decree and this petition for annulment.

In this Court, both Albert Dunn and Josephine Dunn take the position that § 34-1217 Ark. Stats. imposes a mandatory duty on the Chancery Court, and that when said parties filed their joint petition for annulment of the divorce decree, the Chancery Court was required, at all events, to grant the petition for annulment. The said § 34-1217, Ark. Stats., reads as follows:

*"Annulment of decree of divorce.*—The proceedings for annulling a final judgment for a divorce from the bond of matrimony shall be a joint petition of the parties, verified by both parties in person, filed in the court rendering the judgment, upon which the court may forthwith annul the divorce. (Civil Code, § 463; C. & M. Dig., § 3513; Pope's Dig., § 4395."

It is at once apparent that the Statute says: ". . . the Court *may* forthwith annul the decree." Now the

word "may" is usually employed as implying permissive or discretional, rather than mandatory, action or conduct; and it is construed in a permissive sense unless necessary to give effect to the intent to which it is used. 57 C. J. S. 456. To hold that "may" means "shall" in the Statute here involved, would mean that months, or even years, after a divorce decree had been granted, the parties could, by mutual consent, have the divorce decree annulled, regardless of property rights of third parties that had intervened, or regardless of the rights of the State, as the silent third party in every divorce proceeding.[1]

It is clearly apparent that the word "may" was used in § 34-1217,[2] Ark. Stats., in order that the Chancery Court could exercise its judicial discretion in considering a petition for annulment. It would certainly be a revolution in jurisprudence to hold that the Chancery Court—a court of vast discretional powers—is stripped of all discretion and is mandatorily required to act as a rubber stamp and set aside a divorce decree whenever the parties to that divorce decide to have the decree annulled. We have found no case, from any State, having a Statute similar to ours, which holds that the Court is required to grant an annulment in a case like the one at bar, without being free to exercise judicial discretion. See 17 Am. Jur. 372; 27 C. J. S. 806 and 913; and see, also, *Colvin v. Colvin,* 2 Paige Chan. (N. Y.) 385, 22 Am. Dec. 644.

In view of the discretion which the Statute, here involved, gives to the Chancery Court, we conclude: (a) that the Court was not mandatorily required to annul the divorce decree on the joint petition of the parties, but was free to exercise discretion; and (b) that no abuse of discretion is here shown.

The action of the Chancery Court is, therefore, in all things affirmed.

---

[1] In *Mohr* v. *Mohr,* 206 Ark. 1094, 178 S. W. 2d 502, we said that the State was the "silent third party to every divorce suit."

[2] This § 34-1217 Ark. Stats. comes to us from § 463 of our Civil Code of 1869, which is a verbatim copy of the Kentucky Code of 1854; and that Code was in turn modeled from the Field Code of New York of 1848.