The Honorable Neely Cassady State Senator P.O. Box 1810 Nashville, AR 71852
Dear Senator Cassady:
This is in response to your request for an opinion regarding a situation that has arisen involving the Spring Hill School District (Hempstead County) and the Lewisville School District (Lafayette County). According to correspondence attached to your request, your question involves the efforts of two former Springs Hill District students to attend the Spring Hill District, following their move to the Lewisville District. The Lewisville District (the resident district) has apparently declined to grant a transfer to the Spring Hill District (the nonresident district) under a policy not to grant transfers. Your question is as follows:
 Are the schools making proper interpretation of the statute when they make no-transfer policies such as Lewisville is said to have made? I am not sure if Lewisville is still under a desegregation order; if they are not, will that make a difference in the interpretation?
Arkansas Code Annotated § 6-18-316 (Cum. Supp. 1991) provides for the transfer, upon petition, of a student residing in one district (the resident district) to another district (the receiving district), where both districts agree to the transfer. Subsection (a) of § 6-18-316 states that "the board of directors of the resident district may enter into an agreement with the board of directors of the receiving school district transferring the student to the receiving district for purposes of education." (Emphasis added.) It is thus clear that the approval of both the resident and the non-resident district is required for such a transfer. See Love v. Hill, 297 Ark. 96, 759 S.W.2d 550
(1988) and Newark Sch. Dist. v. Cord-Charlotte Sch. Dist.,278 Ark. 110, 644 S.W.2d 110 (1983).[1] The use of the word "may" also indicates that the districts are not required to enter into such agreements. The Arkansas Supreme Court has held that the word "may" is usually employed as implying permissive or discretional, rather than mandatory, action or conduct. McMasterv. McIlroy Bank, Trustee, 9 Ark. App. 124, 654 S.W.2d 591
(1983); Dunn v. Dunn, 222 Ark. 85, 257 S.W.2d 283 (1953). It is construed in a permissive sense unless the context of the statute requires that it be construed as mandatory. Ark. State RacingComm. v. Southland Racing Corp., 226 Ark. 995, 295 S.W.2d 617
(1956).
I cannot conclude that the word "may" must be construed as "shall" in the context of § 6-18-316. It must be noted in this regard that although the resident district retains its local tax money upon the transfer of a student outside its district, the receiving district is permitted to count the student in its average daily membership for state aid purposes. This factor further suggests that the resident district may, but cannot be compelled to agree to a transfer. It necessarily follows that there is no prohibition against a school district's policy of not granting transfers under this provision.[2]
With regard to the second part of your question, involving the existence of a desegregation order, I do not believe a different interpretation is required if the district is not currently under such an order. As stated above, the language of § 6-18-316 is permissive. The fact that a district either is currently or was at some time subject to such an order would not appear to impact the discretional nature of this provision.
The correspondence attached to your request also suggests that some explanation of another provision in the Arkansas Code for student transfers is necessary. Reference is made in this correspondence to the "Freedom of Choice Act of 1987." The "Arkansas Public School Choice Act of 1989" (Act 609 of 1989) is codified, as amended, at A.C.A. § 6-18-206 (Cum. Supp. 1991). (I have enclosed a copy of this section for your convenience.) This act established a public school choice program. Subsection (a) of § 6-18-206 states:
 (1) The General Assembly hereby finds that the students in Arkansas' public schools and their parents will become more informed about and involved in the public educational system if students and their parents or guardians are provided greater freedom to determine the most effective school for meeting their individual educational needs. There is no "right" school for every student, and permitting students to choose from among different schools with differing assets will increase the likelihood that some marginal students will stay in school and that other, more motivated, students will find their full academic potential.
 (2) The General Assembly further finds that giving more options to parents and students with respect to where they attend public school will increase the responsiveness and effectiveness of the state's schools, since teachers, administrators, and school board members will have added incentive to satisfy the educational needs of the students who reside in the district.
 (3) The General Assembly therefore finds that these benefits of enhanced quality and effectiveness in our public schools justify permitting a student to apply for admission to a school in any district beyond the one in which he resides, provided that the transfer by this student would not adversely affect the desegregation of either district.
 (4) A public school choice program is hereby established to enable any pupil to attend a school in a district in which the pupil does not reside, subject to the restrictions contained in this section.
The act thus enables a student to attend a school outside his resident district if the desegregation of either district would not be adversely affected. Application is made to the nonresident district, and the application must be acted upon within sixty days. A.C.A. § 6-18-206(b)(1). The application process does not appear to involve the resident district. The district to which a student wishes to transfer must, however, be a "participating district." See A.C.A. § 6-18-206(b)(1)(B) and (b)(2). A school board may, by resolution, decide that it will not admit any nonresident students under this provision. A.C.A. §6-18-206(b)(3).
With regard to the restriction involving desegregation, subsection (g)(1) of § 6-18-206 states that "[n]o student may transfer to a nonresident district where the percentage of enrollment for the student's race exceeds that percentage in his resident district except in the circumstances set forth in subdivision (2) of this subsection." With regard, specifically, to the situation presented in your opinion request, §6-18-206(g)(1) prevents the transfer of a white student from the Lewisville (resident) District, which is 41% white, to the Spring Hill District which is 99% white. Nor is the exception under subsection (g)(2) available in that case because the districts in question are in different counties. Subsection (g)(2) of §6-18-206 states in pertinent part that "[a] transfer to a district is exempt from the restriction set forth above if all districts within a county have voted to participate in choice, and the transfer is between two (2) districts within a county. . . ."
Thus, while provision has been made for choice in school attendance, there are certain limitations that must be considered. It appears from the facts set forth in the material submitted with your request that the School Choice Act of 1989 does not authorize a transfer in this instance.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] The resident district and the district to which a student has been legally transferred are the districts that shall be "open and free" for persons attending public schools in the state. A.C.A. § 6-18-202 (Cum. Supp. 1991). That is, persons between the ages of five (5) and twenty-one (21) are entitled to attend school in those districts. See also Op. Att'y Gen.88-089.
[2] Even if both districts agree to a transfer, consideration must be given to § 6-18-317, which prohibits a transfer that would "negatively affect the racial balance" of a district that is or has ever been under a desegregation-related court order. A.C.A. § 6-18-317(a) (Cum. Supp. 1991). Although there is a waiver provision, the State Board of Education must determine that the district's desegregation status "would not be adversely affected by allowing a legal transfer which would negatively affect the districts racial balance." A.C.A. § 6-18-318 (Cum. Supp. 1991).